**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| UNITED STATES for the use and benefit of AGATE STEEL, INC. and AGATE STEEL, INC., | Case No. 2:13-CV-01907-APG-NJK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF AGATE STEEL, INC.'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JAYNES CORPORATION and WESTERN SURETY COMPANY, | (ECF No. 91) |
| Defendants. | |
| AND ALL RELATED CLAIMS. | |

This case arises out of a construction project for the United States government located in Indian Springs, Nevada. Defendant Jaynes Corporation was the prime contractor on the project. Jaynes subcontracted with third party defendant American Steel Corporation which in turn subcontracted some of its work to plaintiff Agate Steel, Inc. Agate claims it performed the work but was not paid.

Agate filed this suit against Jaynes and Jaynes' surety, defendant Western Surety Company, under the Miller Act, which requires contractors doing construction contract work for the United States government to obtain performance and payment bonds to ensure the work is completed and that all persons supplying labor and material for the project are paid. *See* 40 U.S.C. § 3131. Jaynes and Western filed a third party complaint against American Steel and its surety, third party defendant Ohio Casualty Insurance Company, contending that to the extent Agate is entitled to payment, American Steel and Ohio Casualty must pay. Jaynes and Western also contend American Steel did not complete all of the work and thus is liable for breach of contract and for payment on the performance bond issued by Ohio Casualty. American Steel

/ / / /

1   filed a counterclaim against Jaynes and Western, claiming Jaynes breached the contract and failed

2   to pay American Steel for work performed on the project.

3          Agate now moves for summary judgment against Jaynes and Western, arguing no genuine

4   issues of fact remain that it performed work on the project, has not been paid for that work, and

5   Jaynes and Western are liable under the payment bond to pay for that work.  Agate also argues it

6   is entitled to attorney's fees.  Jaynes and Western oppose.

7          I grant Agate's motion for summary judgment against Jaynes and Western on Agate's

8   Miller Act claim in the amount of $126,907.00.  I deny summary judgment in Agate's favor on

9   the issue of attorney's fees.

10   **I.  BACKGROUND**

11          In June 2011, Jaynes entered into a construction contract with the U.S. Army Corps of

12   Engineers related to the Creech Air Force Base Fire-Crash Rescue Station located in Indian

13   Springs, Nevada. ECF Nos. 1 at 2; 15 at 2.  Jaynes obtained a Miller Act payment bond from

14   Western in relation to the project. ECF Nos. 1 at 3; 15 at 2.

15          Jaynes subcontracted with American Steel for steel fabrication and erection for the

16   project. ECF Nos. 1 at 3; 15 at 3; 105-1 to 105-6.  American Steel subcontracted with Agate to

17   perform the work on American Steel's behalf. ECF Nos. 1; 109-7.  Under the subcontract,

18   American Steel agreed to pay Agate within 45 days after the work was completed. ECF No. 109-

19   7 at 2.  The original contract amount was $79,913.00. *Id.*

20          The American Steel/Agate subcontract provided that "no change orders or contract

21   additions will be made unless agreed to in writing." ECF No. 113-7 at 4.  The contract states that

22   "[i]f additional work is performed and not covered in this contract, [Agate] proceeds at [its] own

23   risk and expense.  No alterations, additions, or small changes can be made in the work or method

24   of the performance, without the written change order signed by [American Steel] and [Agate]."

25   *Id.*

26          Agate submitted to American Steel change orders in the following amounts:

27          Change order #1:      $32,200.00

28

Change order #9:      $6,142.00

Change order #10:     $1,316.00

Change order #11:     $658.00

Change order #13:     $6,064.00

Change order #18:     $970.00

ECF No. 152 at 18-34, 50-52.  The change orders are not signed by American Steel. *Id.*

Agate admits that it often received only verbal authorization for change order work. ECF No. 155 at 89, 92-93.  However, Al Dann, Agate's Vice President, testified that American Steel provided the material for the changes, which he presumed to mean that American Steel desired the change order work to be performed. *Id.* at 8, 92.

Agate also submitted time and material ("T&M") summaries as follows:

T&M #1:     $3,464.00

T&M #2:     $2,693.00

T&M #3:     $460.00

ECF No. 152 at 36-48, 60-72.  The T&M summaries are not signed by American Steel, except for T&M summary #2, for which American Steel approved two hours' worth of work to trim outriggers. *Id.*  Agate thus claimed a total of $53,967.00 for change orders plus time and materials.

Agate submitted the following invoices to American Steel:

May 31, 2013:      $67,926.00

June 30, 2013:     $26,500.00

July 31, 2013:     $44,104.00

*Id.* at 74-84.  Agate thus requested payment in the amount of $138,530.00. *Id.*  Agate admits it did not complete all work under the original contract. ECF No. 155 at 7.  Specifically, Agate admits it did not install a ladder or trash gates, and it did not perform remobilization. *Id.*

On June 18, 2013, Tim Williamson, president of American Steel, sent an email to Agate's Dann stating the "current status of the Revised contract amount for Agate, Inc." was as follows:

| | |
|---|---|
| Base Bid: | $79,913.00 |
| Change orders 1, 3, 4: | $27,000.00 |
| Change Order[s] 9, 10, 11: | $8,355.00 |
| Change Order[s] 13, 18: | $7,034.00 |
| Field Work Order dated 5/20: | $3,464.00 |
| Field Work Order dated 5/30: | $1,141.00 |
| Total to date Approved by Tim Williamson: | $126,907.00 |

ECF Nos. 152 at 86; 155 at 8.  Williamson's email directed Agate to "[p]lease proceed with the work items above ASAP." ECF No. 152 at 86.  Williamson also asked Dann to "inform us as to how fast we can remobilize and finish this work." *Id.*

Following this email, Agate performed additional work on the project. *Id.* at 71-72. According to Dann, Agate returned to the jobsite "[a]s a result of Williamson's email and approval of the contract amount through that date," and Agate "expected to receive payment." ECF No. 155 at 9.

On July 17, 2013, American Steel sent a letter to Agate, copied to Jaynes, objecting to several of Agate's charges. ECF No. 113-9.  Specifically, American Steel contended that change order #1 contained work that was covered by Agate's initial bid. *Id.* at 2.  Additionally, American Steel contended that the field work orders were not submitted for approval in writing before the work was completed. *Id.* at 2-3.  American Steel stated that it would not pay Agate unless Jaynes approved the work and paid American Steel for it. *Id.* at 3.  Further, American Steel asserted that Jaynes was claiming another contractor had performed some work that Agate was claiming it had performed in change orders #9, #10, #11, and #18. *Id.* at 3.

On August 19, 2013, Agate submitted a claim to Western's claims department, and copied Jaynes and American Steel. ECF No. 152 at 88.  Agate stated it had completed its work, had not received any additional punch list items, and requested payment in the amount of $138,530.00. *Id.*

On September 9, 2013, American Steel wrote to Jaynes advising that Agate had performed work without signed change orders from American Steel, but that American Steel nevertheless

would request change order approval and payment from Jaynes. ECF No. 113-12.  According to American Steel, "Agate performed this work at their own risk, without following our contract language addressing changes in the field." *Id.* at 2.  American Steel thus "protest[ed] the claim from Agate Erectors," stating that the "Base Bid contract amount is $79,913, plus completed work authorized by [American Steel] will add $460 and $269" for a total of $80,642.00, less $5,300.00 Agate offered to deduct, leaving a net amount of $75,342.00 due to Agate. *Id.* at 3.

On October 8, 2013, American Steel wrote to Western again stating that change order #1 was rejected because it covered items that were included in the base bid and the field work orders were not all authorized. ECF No. 113-11 at 2.  In this letter, American Steel also contended that Agate agreed to perform work approved by Jaynes but not approved by American Steel so American Steel would not pay for it. *Id.* at 2.  Additionally, American Steel contended that Agate agreed to reduce its base bid $5,300.00 based on work not completed, that Jaynes charged American Steel $5,600.00 for work another contractor had to complete because Agate did not, and that Agate did not complete all work contained within the base bid. *Id.* at 2-3.  Based on American Steel's calculations, Jaynes owed Agate $69,013.00 and American Steel owed $729.00. *Id.* at 3.

Agate has not been paid any amount by Jaynes, Western, American Steel, or Ohio Casualty. ECF No. 155 at 7.  Agate therefore filed suit against Jaynes and Western to obtain payment under the Miller Act bond. ECF No. 1.

Agate now moves for summary judgment, arguing that it performed work on the project and made demand for payment but has not been paid.  Agate seeks the contract amount of $79,913.00 plus the change order amount of $53,967.00, for a total of $133,880.00.  Agate also argues that to the extent there is a dispute about money owed beyond the amount approved by Williamson in his June 18, 2013 email, then Agate will accept the amount of $126,907.00 for

1  purposes of this motion.  Agate also argues it is entitled to attorney's fees because Jaynes and

2  Western have refused to pay without a reasonable basis or to harass Agate.[1]

3      Jaynes and Western respond that the amount due to Agate is disputed because Agate did

4  not obtain American Steel's written approval to complete the change order work.  Additionally,

5  they contend other aspects of Agate's bills are disputed.  They also argue that because the amount

6  due is reasonably under dispute, there is no basis to award attorney's fees.

7  **II.  ANALYSIS**

8      Summary judgment is appropriate if the pleadings, discovery responses, and affidavits

9  demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to

10  judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the

11  outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

12  (1986).  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict

13  for the nonmoving party." *Id.*

14      The party seeking summary judgment bears the initial burden of informing the court of the

15  basis for its motion and identifying those portions of the record that demonstrate the absence of a

16  genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden

17  then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine

18  issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.

19  2000).  I view the evidence and reasonable inferences in the light most favorable to the non-

20  moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

21  **A.  Miller Act**

22  Under 40 U.S.C. § 3133(b)(2),

23  [a] person having a direct contractual relationship with a subcontractor but no
   contractual relationship, express or implied, with the contractor furnishing the
24  payment bond may bring a civil action on the payment bond on giving written
   notice to the contractor within 90 days from the date on which the person did or
25  performed the last of the labor or furnished or supplied the last of the material for
   which the claim is made.

26

27      [1] Agate also requested payment and attorney's fees based on an alleged joint check agreement,
   however it has withdrawn its claims based on that agreement. ECF No. 123.
28

Thus, a sub-subcontractor may sue to recover on the general contractor's payment bond. In addition to providing notice of the claim within 90 days, suit must be brought within "one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. § 3133(b)(4).

To establish a Miller Act claim, Agate must show:

> (1) the [labor and] materials were supplied in prosecution of the work provided for in the contract; (2) [Agate] has not been paid; (3) [Agate] had a good faith belief that the [labor and] materials were intended for the specified work; and (4) the jurisdictional requisites were met.

*U.S. for Use & Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984). "The purpose of the Act is to protect persons supplying materials and labor for federal projects, and it is to be construed liberally in their favor to effectuate this purpose." *Id.*

The parties do not dispute that Agate provided labor and materials for the project, that Agate had a good faith belief its work was intended for the project, and that it met the jurisdictional requisites by filing a claim on the bond within 90 days and filing suit within a year of the last work performed. Thus, the only question is whether Agate has not been paid.

Jaynes and Western argue there are issues of fact regarding the amount due because Agate failed to comply with the subcontract's requirement that it obtain written authorization prior to performing work beyond the original bid's scope. Jaynes and Western rely on the change orders, which were not signed by American Steel as the subcontract required. Jaynes and Western also rely on the letters from American Steel to Agate, Jaynes, and Western in which American Steel contends Agate failed to obtain prior written authorization for its change orders and in which American Steel disputes the amounts due.

Agate responds that under Nevada law, the parties to the subcontract can agree to waive the requirement for written change orders. Agate contends that when Williamson agreed to the change orders in his June 18, 2013 email, he waived the written change order requirement. Agate argues that American Steel's later letters disputing the contract amount cannot undo Williamson's

1   June 18 email agreeing to the revised contract amount of $126,907.00, which included the change

2   orders.  In its reply, Agate states that if I find there are disputed issues of fact as to the amount

3   owed to Agate above $126,907.00, then Agate is willing to waive the excess amount for purposes

4   of this motion only. ECF No. 122 at 4-5.

5       "[S]tate law controls the interpretation of Miller Act subcontracts to which the United

6   States is not a party." *U.S. for Use & Benefit of Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir.

7   1989).  I "use the law of the forum state to construe the agreement." *Id.*  Nevada law therefore

8   governs the interpretation of the subcontract between American Steel and Agate.

9       Under Nevada law, parties to a contract may waive a contractual requirement that change

10  orders be in writing. *Udevco, Inc. v. Wagner*, 678 P.2d 679, 682 (Nev. 1984).  "Waiver is usually

11  defined as the voluntary and intentional relinquishment of a known right and may be either

12  express or implied." *Id.* (quotation omitted).  "Waiver can be implied from conduct such as

13  making payments for or accepting performance which does not meet contract requirements;

14  waiver can also be expressed verbally or in writing." *Id.*  "Express waiver, when supported by

15  reliance thereon, excuses nonperformance of the waived condition." *Id.*

16      Here, Agate has presented evidence that American Steel waived the requirement that

17  change orders be approved in a writing signed by both American Steel and Agate.  Agate

18  presented change orders and T&M summaries for payment.  In his June 18 email, American

19  Steel's president, Williamson, approved a revised contract amount of $126,907.00.  He also

20  directed Agate to proceed with work as soon as possible and asked how soon Agate could return

21  to the work site.  Agate subsequently performed more work on the project based on the approval

22  of the change orders.  No issue of fact remains that the parties therefore waived the requirement

23  that the change orders be in a writing signed by both parties.

24      This case is similar to *Udevco, Inc.*  There, the subcontractor, Wosser-Laster Enterprises,

25  performed extra work beyond that specified in the contract after the contractor's superintendent

26  told Wosser to complete the work and assured that Wosser would be paid for it. 678 P.2d at 188.

27  The Supreme Court of Nevada held, as a matter of law, that based on the contractor's "express

28

oral waiver and Wosser's reliance thereon, [the contractor] *at that time* was bound to pay for the extra work, regardless of whether it later failed to pay." *Id.* at 189 (emphasis in original).  The contractor did "not controvert[] the facts that express oral waiver was pronounced and extra work performed in reliance thereon." *Id.*  The court therefore held "as a matter of law, that the parties mutually intended to waive the written change order condition." *Id.* at 190.

Similarly, here Agate submitted change orders, American Steel agreed that Agate's contract price would be revised to reflect that work, and Agate resumed work in reliance on Williamson's email with the approved revised contract amount.  American Steel urged Agate to proceed with the work as soon as possible and to inform American Steel when Agate would return to the worksite.  Agate returned after the June 18 email and performed more work.  As in *Udevco*, it would be "highly unreasonable" to conclude that even though American Steel agreed to the revised contract price and urged Agate to complete work as soon as possible, the parties did not intend for Agate to be paid as agreed. *Id.*

Jaynes and Western rely on American Steel's later letters to argue that American Steel disputes Agate's charges.  However, American Steel had already agreed to the revised contract price and Agate had already relied on Williamson's email to return to the worksite.  Additionally, Jaynes and Western present no evidence, other than American Steel's unsupported allegations in its letters, that Agate included in change order #1 work that was part of the base bid or did not otherwise perform the work for which it submitted invoices.  Consequently, no issue of fact remains that Agate is entitled to payment of the undisputed amount of $126,907.00 per the June 18 email.  However, Agate has not established as a matter of law that American Steel and Agate agreed to revise the contract price or waive the requirement of a signed change order with respect to any amount above $126,907.00.  Agate has agreed, for purposes of this motion, to waive any claimed amount above $126,907.00.  I therefore grant summary judgment in Agate's favor against Jaynes and Western in the amount of $126,907.00.

Jaynes and Western argue that to the extent they owe Agate, then American Steel must defend and indemnify Jaynes and Western.  That argument has no bearing on Agate's motion and

1   I therefore will not address it here.  Jaynes and Western also argue that Agate should be required

2   to first attempt to obtain payment from American Steel and its surety, Ohio Casualty, before

3   making a claim on the Jaynes/Western bond.  However, Jaynes and Western cite no authority for

4   that proposition.[2]  There is no requirement in the Miller Act that a sub-subcontractor first attempt

5   to obtain payment from the subcontractor before making a claim on the prime contractor's bond.

6   Such a rule would jeopardize the ability of sub-subcontractors to bring Miller Act claims because

7   of the jurisdictional requisites.  If a sub-subcontractor had to first proceed against the

8   subcontractor before it could make a claim against the prime contractor's bond, the 90-day notice

9   and one-year limitations periods may expire before it could make a claim on the prime

10   contractor's bond.  Agate therefore was not required to sue American Steel and Ohio Casualty

11   before seeking payment under Jaynes' and Western's bond.

12   **B. Attorney's Fees**

13       In its motion, Agate makes two arguments for why it should be awarded attorney's fees.

14   First, it argues Jaynes promised to pay Agate under a joint check agreement and that promise

15   incorporated the attorney's fee provision in the American Steel/Agate subcontract.  Agate has

16   withdrawn all arguments based on the joint check agreement (ECF No. 123), so I deny Agate's

17   motion for attorney's fees based on this agreement.

18       Second, Agate argues that Jaynes and Western should be ordered to pay attorney's fees

19   under Nevada Revised Statutes § 18.010(2)(b) because they refused to pay Agate without a

20   reasonable basis or to harass Agate.  Jaynes and Western respond that they were entitled to defend

21   this action given the disputed amounts due to Agate.[3]

22

23   _____

24       [2] The one case Jaynes and Western cite has nothing to do with requiring a sub-subcontractor to make demand on the subcontractor before seeking payment under the prime contractor's bond. *See U.S. for Use & Benefit of E. Gulf, Inc. v. Metzger Towing, Inc.*, 910 F.2d 775, 781 (11th Cir. 1990) (evaluating whether a prime contractor should be liable to a subcontractor for "standby time" on a *quantum meruit* theory even though the prime contractor did not breach the contract's terms).

26       [3] Jaynes and Western also argue the Miller Act does not provide for attorney's fees.  Because Agate did not request attorney's fees under the Miller Act, I need not consider this argument.  Nor will I consider Agate's argument and legal authority, raised for the first time in its reply brief, that interest and attorney's fees are recoverable from the prime contractor if they are provided for in the sub-subcontract.

Because Agate's claim arises under the Miller Act, "the scope of the remedy as well as the substance of the rights created thereby is a matter of federal not state law." *Technica LLC ex rel. U.S. v. Carolina Cas. Ins. Co.*, 749 F.3d 1149, 1152 (9th Cir. 2014).  Miller Act claims follow the American rule, under which "[e]ach party bears its own legal costs absent an enforceable contract provision or evidence that an opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *U.S. ex rel. Leno v. Summit Constr. Co.*, 892 F.2d 788, 791 (9th Cir. 1989). "Congress did not intend to incorporate state law governing the award of attorneys' fees into the Miller Act and saw no compelling reason to create a Miller Act exception to the general American rule." *Id.* "Therefore, unless there is a separate state claim at the trial level attorneys' fees are not available in a Miller Act suit even when state law provides for such an award." *Id.*

I deny Agate's claim for attorney's fees under Nevada Revised Statutes § 18.010(2)(b) because state law does not apply to its Miller Act claim.  However, even if I applied the state statute, or viewed Agate's argument as one under federal law that Jaynes and Western acted in bad faith, vexatiously, wantonly, or oppressively, I would deny the requested fees.  Jaynes and Western's argument that the amount owed to Agate was disputed was not baseless given the contract language, the unsigned change orders, and the later disputes among the various parties. There is no evidence Jaynes or Western have acted with an improper purpose.  I therefore deny Agate's summary judgment motion for attorney's fees.

////
////
////
////
////
////
////

---

*See* ECF No. 122 at 6-7; *Vasquez v. Rackauckas*, 734 F.3d 1025, 1054 (9th Cir. 2013) (refusing to consider an argument raised for the first time in a reply brief).

1  **III.  CONCLUSION**

2          IT IS THEREFORE ORDERED that plaintiff Agate Steel, Inc.'s motion for summary

3  judgment **(ECF No. 91) is GRANTED in part and DENIED in part**.  The motion is granted to

4  the extent that Agate Steel is entitled to payment of $126,907.00 from defendants Jaynes

5  Corporation and Western Surety Company.  The motion is denied as to any amounts above

6  $126,907.00 and as to attorney's fees.

7          DATED this 17th day of June, 2016.

8

9                                                _____

                                                 ANDREW P. GORDON

10                                               UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28