# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES for the use and benefit of AGATE STEEL, INC. and AGATE STEEL, INC., | Case No. 2:13-CV-01907-APG-NJK |
| Plaintiffs, | **ORDER** |
| v. | (ECF Nos. 110, 117) |
| JAYNES CORPORATION and WESTERN SURETY COMPANY, | |
| Defendants. | |
| AND ALL RELATED CLAIMS. | |

This case arises out of a construction project for the United States government located in Indian Springs, Nevada.  Defendant Jaynes Corporation was the prime contractor.  Jaynes subcontracted with third party defendant American Steel Corporation, which subcontracted some of its work to plaintiff Agate Steel, Inc.  Agate claims it performed the work but was not paid.

Agate filed this suit against Jaynes and Jaynes' surety, defendant Western Surety Company, under the Miller Act, which requires contractors doing construction contract work for the United States government to obtain performance and payment bonds to ensure the work is completed and that all persons supplying labor and material for the project are paid. *See* 40 U.S.C. § 3131.  Jaynes and Western filed a third party complaint against American Steel and its surety, third party defendant Ohio Casualty Insurance Company, contending that to the extent Agate is entitled to payment, American Steel and Ohio Casualty must pay.  Jaynes and Western also contend American Steel did not complete all of the work and thus is liable for breach of contract and for payment on the performance bond issued by Ohio Casualty.  American Steel

1  filed a counterclaim against Jaynes and Western, claiming Jaynes breached the contract and failed

2  to pay American Steel for work performed on the project.

3      Jaynes and Western now move for summary judgment, arguing that to the extent Agate

4  obtains a judgment against Jaynes and Western, the Ohio Casualty payment bond requires Ohio

5  Casualty to defend and indemnify Jaynes.  American Steel and Ohio Casualty also move for

6  summary judgment, arguing that Jaynes cannot assert a claim against the Ohio Casualty

7  performance bond because Jaynes not did not comply with the bond's conditions precedent.

8  American Steel and Ohio Casualty also argue that Jaynes might be able to assert a claim against

9  the Ohio Casualty payment bond, but only to the extent of any judgment entered against Jaynes in

10  favor of Agate, and only to a maximum amount of the payment bond's penal sum of $255,000.00.

11      I partially grant Jaynes and Western's motion because Jaynes is entitled to a claim under

12  the payment bond for any judgment entered against it in favor of Agate, unless Jaynes was in

13  material breach of the subcontract.  I grant American Steel and Ohio Casualty's motion because

14  Jaynes did not comply with the performance bond's conditions precedent and because the

15  payment bond limits Ohio Casualty's liability to $255,000.00 in the circumstances presented here.

16  **I.  BACKGROUND**

17      In June 2011, Jaynes entered into a construction contract with the U.S. Army Corps of

18  Engineers related to the Creech Air Force Base Fire-Crash Rescue Station located in Indian

19  Springs, Nevada. ECF Nos. 1 at 2; 15 at 2.  Jaynes obtained a Miller Act payment bond from

20  Western in relation to the project. ECF Nos. 1 at 3; 15 at 2.

21      Jaynes subcontracted with American Steel for steel fabrication and erection for the

22  project. ECF Nos. 1 at 3; 15 at 3; 111-4 to 111-9.  American Steel was required to obtain surety

23  bonds securing its performance of the subcontract and its payment obligations for work it

24  subcontracted. ECF No. 111-6 at 5.  American Steel obtained those bonds from Ohio Casualty.

25  ECF Nos. 111-10; 118-1.

26      The parties' relationship broke down, as Jaynes and American Steel each blamed the other

27  for delays and problems associated with the project. *See, e.g.*, ECF Nos. 140-1 at 23, 25, 33-38,

28

1  45-48; 141-5; 141-11 to 141-15.  Eventually, American Steel advised Jaynes that it would not

2  return to the project until Jaynes signed change orders and paid it for work performed; in

3  response, Jaynes hired a replacement subcontractor to complete the work. ECF Nos. 140-1 at 25,

4  31; 141-11 at 5.

5  In its third party complaint, Jaynes seeks payment on the Ohio Casualty performance bond

6  based on its contention that American Steel failed to finish the subcontract work. ECF No. 15 at

7  10-11.  Jaynes also seeks payment on the Ohio Casualty payment bond based on Agate's demand

8  that Jaynes pay for Agate's work. *Id.* at 11.

9  Jaynes and Western move for summary judgment only on the issue of whether Ohio

10  Casualty must defend and indemnify Jaynes under the payment bond for any judgment entered in

11  favor of Agate against Jaynes.  American Steel and Ohio Casualty move for summary judgment

12  on the issues of whether Jaynes is entitled to make a claim on the performance bond and whether

13  any recovery Jaynes may have under the payment bond is limited to a judgment in favor of Agate

14  and is capped at the bond's penal amount of $255,000.00.

15  **II.  ANALYSIS**

16  Summary judgment is appropriate if the pleadings, discovery responses, and affidavits

17  demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to

18  judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  A fact is material if it "might affect the

19  outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

20  (1986).  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict

21  for the nonmoving party." *Id.*

22  The party seeking summary judgment bears the initial burden of informing the court of the

23  basis for its motion and identifying those portions of the record that demonstrate the absence of a

24  genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden

25  then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine

26  issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.

27

28

1   2000).  I view the evidence and reasonable inferences in the light most favorable to the non-

2   moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

3   A surety bond is a contract. *See Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257,

4   260 (Nev. 1997).  Contract interpretation is a question of law, absent ambiguities or "other factual

5   complexities." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013) (quotation

6   omitted).  The goal of contract interpretation is to give effect to the contracting parties' intent.

7   *Am. First Fed. Credit Union v. Soro*, 359 P.3d 105, 106 (Nev. 2015) (en banc).  "Traditional rules

8   of contract interpretation are employed to accomplish that result." *Id.* (quotation omitted).  I begin

9   by determining whether the contract's language is "clear and unambiguous; if it is, the contract

10  will be enforced as written." *Id.* (quotation omitted).  "A contract is ambiguous when it is subject

11  to more than one reasonable interpretation." *Anvui, L.L.C. v. G.L. Dragon, L.L.C.*, 163 P.3d 405,

12  407 (Nev. 2007).  But the mere fact that the parties disagree about how to interpret the contract

13  does not render it ambiguous. *Galardi*, 301 P.3d at 366.  "Rather, an ambiguous contract is an

14  agreement obscure in meaning, through indefiniteness of expression, or having a double

15  meaning." *Id.* (quotations omitted).

16  **A.  Jaynes and Western's Motion on the Payment Bond**

17  Under section 3 of the Ohio Casualty payment bond,

18  [i]f there is no Owner Default under the Construction Contract, [Ohio Casualty's]
    obligation to [Jaynes] under this Bond shall arise after [Jaynes] has promptly
19  notified [American Steel] and [Ohio Casualty] (at the address described in Section
    13) of claims, demands, liens or suits against [Jaynes] or [Jaynes'] property by any
20  person or entity seeking payment for labor, materials or equipment furnished for
    use in the performance of the Construction Contract and tendered defense of such
21  claims, demands, liens or suits to [American Steel] and [Ohio Casualty].

22  ECF No. 111-10 at 3.  "Owner Default" is defined as the "[f]ailure of the Owner, which has not

23  been remediated or waived, to pay the Contractor as required under the Construction Contract or

24  to perform and complete or comply with the other material terms of the Construction Contract."

25  *Id.* at 5.  The payment bond defines the "Owner" as Jaynes and the "Contractor" as American

26  Steel. *Id.* at 1.  If Jaynes complies with section 3, then Ohio Casualty "shall promptly and at

27

28

1   [Ohio Casualty's] expense defend, indemnify and hold harmless [Jaynes] against a duly tendered

2   claim, demand, lien or suit." *Id.* at 3.

3       On August 19, 2013, Agate submitted a claim to Western's claims department, and copied

4   Jaynes and American Steel. ECF No. 152 at 88.  Ten days later, Jaynes filed a notice of claim

5   under the Ohio Casualty payment bond based on Agate's request for payment.[1] ECF No. 141-7.

6   On April 15, 2014, Jaynes sent another letter to Ohio Casualty demanding Ohio Casualty defend

7   and indemnify Jaynes against Agate's claim for payment. ECF No. 141-9.

8       Under the payment bond's unambiguous terms, Ohio Casualty must defend and indemnify

9   Jaynes for any judgment Agate obtains against Jaynes in this case unless Jaynes defaulted under

10  the subcontract with American Steel.  Jaynes timely notified Ohio Casualty of Agate's claim and

11  Agate seeks payment for labor, materials, or equipment Agate furnished for the performance of

12  the construction contract.  Additionally, Jaynes tendered the defense to Ohio Casualty.

13      American Steel and Ohio Casualty argue that under section 2 of the payment bond, Ohio

14  Casualty's liability does not arise unless American Steel was "the party solely obligated to

15  Agate." ECF No. 140 at 7.  They contend that because Jaynes purportedly agreed to pay Agate

16  directly for work Agate completed, "the obligation to pay Agate for its completed work shifted

17  from American Steel to Jaynes." *Id.*  They further argue that American Steel could not be liable to

18  Agate unless Jaynes breached its agreement to issue a joint check to Agate and American Steel.

19  Finally, they contend that if American Steel does not owe Agate, then Ohio Casualty's obligation

20  does not arise under the payment bond.

21      This argument is meritless.  Under the Agate/American Steel subcontract, American Steel

22  contractually agreed to pay Agate for work performed on the construction project. ECF No. 111-

23  11 at 2.  Jaynes' March 26, 2013 letter does not relieve American Steel of its obligations to pay

24  Agate.  Under that letter, Jaynes agreed to issue joint checks to Agate and American Steel. ECF

25  No. 140-1 at 2.  Nothing in that letter indicates that Jaynes agreed to assume American Steel's

26

27      [1] Jaynes sent the notice of claim to Liberty Mutual Surety Bond. ECF No. 141-7.  Liberty Mutual
    Insurance Company wholly owns Ohio Casualty. ECF No. 147 at 2.  Ohio Casualty does not dispute it was
28  timely notified of the claim on the payment bond.

liability under the subcontract between Agate and American Steel.  Further, section 2 of the payment bond states only that if American Steel promptly pays its subcontractors, and defends and indemnifies Jaynes against claims by American Steel's subcontractors, then American Steel and Ohio Casualty "have no obligation under this Bond." ECF No. 140-1 at 12.  Finally, there is no genuine dispute that Agate qualifies as a claimant under the bond because it had a direct contract with American Steel to furnish labor, materials, or equipment for use in performing the construction contract and it demanded payment from Jaynes for the work it completed on the project. ECF Nos. 111-10 at 3-4; 152 at 88.

However, Jaynes has not presented any evidence showing that no genuine issue of material fact remains that it did not default under its subcontract with American Steel. *See* ECF No. 111.  Consequently, Jaynes has not met its initial burden under Rule 56 of showing that, as a matter of law, it is entitled to indemnity and a defense under the payment bond because the first condition of payment under section 3 is that Jaynes is not in default under the subcontract.  That issue remains for trial.  But if it is determined that Jaynes was not in default, then Ohio Casualty must pay Jaynes under the payment bond for any judgment entered against Jaynes and in favor of Agate.  I therefore grant Jaynes and Western's motion to this extent.

**B. American Steel and Ohio Casualty's Motion on the Payment Bond**

American Steel and Ohio Casualty argue that if Ohio Casualty is liable on the payment bond, then its liability is limited to a judgment in favor of Agate and is capped at the bond's penal sum of $255,000.00.  Jaynes and Western respond that the payment bond includes a duty to defend Jaynes which is not limited to the bond's penal sum.  Jaynes and Western do not contend they are entitled to recover on the payment bond for anything other than defense from and payment of Agate's claim.

Pursuant to section 8 of the Ohio Casualty payment bond, Ohio Casualty's "total obligation shall not exceed the amount of this Bond, plus the amount of reasonable attorney's fees provided under Section 7.3, and the amount of this Bond shall be credit for any payments made in good faith by [Ohio Casualty]." ECF No. 111-10 at 3.  The amount of the payment bond is

$255,000.00. *Id.* at 2.  Section 7.3 requires Ohio Casualty to pay a claimant's reasonable attorney's fees under certain circumstances. *Id.* at 3.  It is undisputed that Jaynes is not a "claimant" under the bond, as that term refers to subcontractors of American Steel who provide labor, material, or equipment to perform the construction contract. ECF Nos. 111-10 at 4; 141 at 17-18.

Under the payment bond's unambiguous terms, Ohio Casualty's liability is capped at $255,000.00.  The only exception for liability to exceed the bond amount is for a claimant's attorney's fees under certain circumstances described in section 7.3.  The parties do not dispute that Jaynes is not a claimant.  Thus, Ohio Casualty's total obligation under the payment bond to Jaynes is capped at $255,000.00 for defense and indemnification of any judgment entered in Agate's favor against Jaynes.  I therefore grant this portion of American Steel and Ohio Casualty's summary judgment motion.

### C. American Steel and Ohio Casualty's Motion on the Performance Bond

Under section 3 of the Ohio Casualty performance bond,

[i]f there is no Owner Default under the Construction Contract, [Ohio Casualty's] obligations under this Bond shall arise after

.1  [Jaynes] first provides notice to [American Steel] and [Ohio Casualty] that [Jaynes] is considering declaring a Contractor Default.  Such notice shall indicate whether [Jaynes] is requesting a conference among [Jaynes, American Steel, and Ohio Casualty] to discuss [American Steel's] performance.  If [Jaynes] does not request a conference, [Ohio Casualty] may, within five (5) business days after receipt of [Jaynes'] notice, request such a conference.  If [Ohio Casualty] timely requests a conference, [Jaynes] shall attend.  Unless [Jaynes] agrees otherwise, any conference requested under this Section 3.1 shall be held within ten (10) business days of [Ohio Casualty's] receipt of [Jaynes'] notice.  If [Jaynes, American Steel, and Ohio Casualty] agree, [American Steel] shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive [Jaynes'] right, if any, subsequently to declare a Contractor Default;

.2  [Jaynes] declares a Contractor Default, terminates the Construction Contract, and notifies [Ohio Casualty]; and

.3  [Jaynes] has agreed to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to [Ohio Casualty] or to a contractor selected to perform the Construction Contract.

ECF No. 118-1 at 3.  Under section 4 of the performance bond, Jaynes' failure "to comply with the notice requirement in Section 3.1 shall not constitute a failure to comply with a condition

precedent to [Ohio Casualty's] obligations, or release [Ohio Casualty] from its obligations, except to the extent [Ohio Casualty] demonstrates actual prejudice." *Id.*

If Jaynes complies with section 3, then Ohio Casualty "shall promptly and at [Ohio Casualty's] expense take one of the following actions:

§ 5.1 Arrange for [American Steel], with the consent of [Jaynes], to perform and complete the Construction Contract.

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors.

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to [Jaynes] for a contract for performance and completion of the Construction Contract . . .; or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to [Jaynes] and, as soon as practicable after the amount is determined, make payment to [Jaynes]; or

.2 Deny liability in whole or in part and notify [Jaynes], citing the reasons for denial.

*Id.*

The notices must be sent to the address shown on the bond's signature page. *Id.* at 4.  On the signature page, Ohio Casualty is listed at a Phoenix, Arizona address. *Id.* at 2.  At the bottom of the page, under the words "FOR INFORMATION ONLY," Ohio Casualty's broker, Bonding Solutions, LLC, is listed at a Mesa, Arizona address. *Id.*

On March 25, 2013, Jaynes sent a letter by email to American Steel advising American Steel that its steel erection plan was late and that American Steel would be responsible for any delays to the project's schedule if its work was not completed on time. ECF Nos. 141-5; 146-1. The letter indicates that it was copied to Ohio Casualty but Ohio Casualty does not have a record of receiving this letter. ECF Nos. 141-5; 147 at 4.

On May 15, 2013, Jaynes sent a 3-Day Written Notice to Cure to American Steel, advising American Steel that it was in default of the contract for failure to maintain the progress schedule. ECF No. 118-1 at 13.  In the notice, Jaynes indicated that if American Steel failed to cure the default, Jaynes "shall have the right to invoke any or all remedies available to it under

1    Article 10 of the Subcontract, including supplementing your work, and any other relief to which

2    Jaynes Corporation may be legally entitled, and to charge the cost of these remedies to American

3    Steel Corporation." *Id.* The notice indicates that a copy was sent to Bonding Solutions, but it

4    does not indicate that it was sent to Ohio Casualty. *Id.*

5         On June 26, 2013, Jaynes sent another letter to American Steel. *Id.* at 15. In that letter,

6    Jaynes stated that because of American Steel's refusal to continue work on the project, Jaynes

7    was entitled to invoke its remedies under Article 10 of the Subcontract. *Id.* The letter states that

8    "[i]n accordance with Article 10.1.1.1 of your subcontract agreement, this letter shall serve as

9    written notification that Jaynes Corporation will be supplementing your work with additional

10   labor, materials and equipment in order to complete the Subcontract Work." *Id.* This letter

11   indicates it was sent to Bonding Solutions, but not to Ohio Casualty. *Id.* The next day, Jaynes'

12   supplemental contractor, Union Erectors, began work. ECF No. 141-8 at 7; *see also* ECF No.

13   140-1 at 31. Union Erectors' last day on the worksite was July 25, 2013. ECF No. 141-8 at 7.

14        According to Curt Brookbank, Director of Special Projects in the Commercial Surety

15   Claims Department for Liberty Mutual, the first notice of claim under the performance bond that

16   Ohio Casualty received from Jaynes was a telephone call on August 28, 2013. ECF No. 147 at 3.

17   Brookbank prepared a letter to Jaynes on August 29, asking for more information. *Id.*; ECF No.

18   147-1 at 10-11. He also called American Steel. ECF No. 147 at 4. That same day, Jaynes filed a

19   written notice of claim under the performance bond. ECF No. 141-7. Jaynes requested payment

20   of $133,607.00 for the cost of completing the work through Union Erectors. *Id.* Jaynes agreed to

21   offset the remaining contract balance of $127,015.20. *Id.*

22        Under section 3.2 of the performance bond, Ohio Casualty's obligations did not arise until

23   after Jaynes declared a Contractor Default, terminated the Construction Contract, and notified

24   Ohio Casualty. There is no evidence that Jaynes terminated the contract or notified Ohio

25   Casualty of the termination so that Ohio Casualty could exercise its options under section 5 of the

26   performance bond. The March 25 letter did not declare a default nor did it terminate the contract.

27   The May 15 letter declared a default but it did not terminate the contract. Instead, the letter

28

1    warned American Steel that if it did not cure the default, then Jaynes would exercise its rights

2    under Article 10 of the contract.

3         The June 26 letter declared a default but it also did not terminate the contract.[2]  Instead,

4    Jaynes exercised its rights under Article 10.1.1.1 of the contract to supplement American Steel's

5    work with another contractor.  Under Article 10.1.1.1 of the contract, if American Steel did not

6    supply enough workers to maintain the progress schedule or otherwise materially breached the

7    contract, then Jaynes was entitled to "supply workers, materials, equipment and facilities as

8    [Jaynes] deemed necessary for the completion of the Subcontract Work . . . and [to] charge the

9    cost . . . and expenses to [American Steel]." ECF No. 111-6 at 6.  This provision does not

10   constitute termination of the contract nor does the letter state that Jaynes is attempting to

11   terminate the contract.

12        Rather, the contract has a separate termination provision, Article 10.1.2. *Id.*  Under Article

13   10.1.2, if American Steel failed to commence correcting a default after a three-day notice of

14   default, then Jaynes was entitled to:

15        issue a second written notification, to [American Steel] and its surety, if any.  Such
          notice shall state that if [American Steel] fails to commence and continue
16        correction of a default within seven (7) Days of the written notification, the
          Agreement will be deemed terminated.  A written notice of termination shall be
17        issued by [Jaynes] to [American Steel] at the time [American Steel] is terminated.

18   *Id.*

19        There is no evidence that Jaynes ever issued a seven-day notice of termination or that it

20   provided that notice to Ohio Casualty.  Nor did Jaynes provide Ohio Casualty with any other

21   letter that stated it was terminating the contract with American Steel such that Ohio Casualty

22   would be on notice that it was expected to commence performing under the bond.  Because

23   Jaynes did not do so, and instead decided to immediately employ a different contractor, Ohio

24   Casualty's performance bond obligations are excused.  The Second Circuit Court of Appeals

25   reached a similar conclusion in *Elm Haven Construction Limited Partnership v. Neri*

26

27        [2] I need not address whether Ohio Casualty received any of the letters prior to August 2013
     because even if it did, the letters do not satisfy section 3.2.

28

1    *Construction LLC*, 376 F.3d 96 (2d Cir. 2004).  As in this case, the plaintiff in *Elm Haven* was

2    entitled to hire additional workers without terminating the contract, and thus "a partial default

3    under the subcontract agreement did not require a termination of that agreement." *Id.* at 98.

4    The Second Circuit stated that if the plaintiff wanted to trigger the performance bond, "it would

5    have had to terminate its relationship with [the contractor] and give [the surety] an opportunity to

6    complete the project itself or hire others to do so." *Id.* at 101.  But, like here, none of the

7    plaintiff's letters "demonstrate[d] an intent to end its relationship with [the contractor] and allow

8    [the surety] to take over the project; to the contrary, these letters provided notice that part of [the

9    contractor's] work would be performed by others, indicating only that [the contractor] would

10   continue to perform some work under the agreement and requesting [the surety's] help in

11   improving the ongoing relationship with [the contractor]." *Id.*  The Second Circuit held that

12   because notice of default was not given until after the plaintiff had already hired another

13   contractor and incurred payment obligations to that other contractor, the surety's performance

14   under the bond was excused. *Id.*

15        Jaynes and Western argue that Ohio Casualty was eventually informed of the default by

16   the August 2013 phone call and letter, so Ohio Casualty is not prejudiced by Jaynes' failure to

17   follow the precise notification procedure in the bond.  They contend that under Nevada law,

18   "contracts of a compensated surety should be liberally interpreted in the interests of the

19   beneficiaries rather than strictly in favor of the surety." *Balboa Ins. Co. v. S. Distributors Corp.*,

20   710 P.2d 725, 727 (Nev. 1985) (citing *Zuni Constr. Co. v. Great Am. Ins. Co.*, 468 P.2d 980, 982

21   (Nev. 1970)).  They thus assert that Jaynes' failure to comply with the bond's procedural notice

22   requirements is a technical violation that should not relieve Ohio Casualty of its obligations under

23   the bond.

24        It is unclear whether Nevada still stands by this statement of the law in relation to sureties

25   because it has rejected the distinction between compensated and uncompensated guarantors. *See*

26   *Dobron v. Bunch*, 215 P.3d 35, 37 (Nev. 2009) (rejecting "any further use of different treatment

27   based on whether the guarantor is compensated" and instead applying "general contract

28

1    interpretation principles . . . to interpret guaranty agreements"). But even if *Balboa* is still the law

2    in Nevada for surety contracts, it has no application here because there is no ambiguity to

3    interpret in Jaynes' favor. *See St. Paul Fire & Marine Ins. Co. v. VDE Corp.*, 603 F.3d 119, 123

4    (1st Cir. 2010) (stating that the principle of construing surety bonds liberally in favor of the

5    beneficiary "is not a blank check to the judicial power to rule out the pacts and agreements

6    between the parties") (quotations omitted).

7          By the bond's plain language, failure to comply with section 3.2 is a condition precedent

8    to Ohio Casualty's obligations arising under the bond, and the parties contractually agreed that

9    Ohio Casualty need not show prejudice from that failure to relieve it of its obligations. Section 3

10   states that Ohio Casualty's obligations under the bond "shall arise after" Jaynes complies with

11   sections 3.1, 3.2, and 3.3. Under section 4, failure to comply with section 3.1 will not constitute a

12   failure to comply with a condition precedent unless Ohio Casualty can show actual prejudice.

13   That provision does not apply to sections 3.2 and 3.3. The parties thus agreed that, unlike section

14   3.1, sections 3.2 and 3.3 were conditions precedent to Ohio Casualty's liability for which it need

15   not demonstrate actual prejudice arising from Jaynes' failure to comply.

16         The parties' contractual arrangement is consistent with general surety law that failure to

17   provide timely notice to the surety that the contractor is being terminated, so that the surety is

18   aware that it is expected to perform and can protect itself through exercising its contractual right

19   to select among its performance options, is a material breach that renders the bond null and void.

20   *See, e.g.*, *CC-Aventura, Inc. v. Weitz Co., LLC*, 492 F. App'x 54, 56-57 (11th Cir. 2012) (holding

21   surety not liable on the bond where contract language required the plaintiff to "first give notice to

22   the surety before [it] undertook to remedy the default itself"); *Seaboard Sur. Co. v. Town of*

23   *Greenfield, ex rel. Greenfield Middle Sch. Bldg. Comm.*, 370 F.3d 215, 219-20 (1st Cir. 2004)

24   (holding that failure to provide notice so that surety could elect remedies to minimize its damages

25   was a material breach of the bond); *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d

26   106, 111 (5th Cir. 1994) (holding that the plaintiff failed to establish a "necessary precondition"

27   to the surety's liability on the bond where the plaintiff had not given the surety unequivocal

28

1   notice of default); *Hunt Constr. Grp., Inc. v. Nat'l Wrecking Corp.*, 542 F. Supp. 2d 87, 95

2   (D.D.C. 2008) ("When an obligee fails to provide timely notice to a surety so it can exercise its

3   options . . ., the obligee has breached the contract and the surety is without liability.").  Jaynes'

4   failure to provide a notice of termination is a material breach that deprived Ohio Casualty of the

5   ability to exercise its options under section 5 of the bond.  That excuses Ohio Casualty's

6   performance.

7           Even if Ohio Casualty must prove prejudice despite the parties' contractual agreement

8   that it does not, it has done so here.  Jaynes' failure to terminate the contract and notify Ohio

9   Casualty of the termination is more than a mere technical violation.  Rather, it deprived Ohio

10  Casualty of its rights under the bond. *See Seaboard Sur. Co.*, 370 F.3d at 220 (rejecting the

11  argument that failure to give a termination notice was a technical breach because "the notice

12  provision . . . provides an opportunity for the surety to cure the breach and thus mitigate

13  damages," and "even if [the surety] must show injury, loss, or prejudice, it meets this hurdle,

14  given its deprivation of mitigation opportunities") (quotation omitted).

15          Jaynes and Western cannot rely on the August 2013 call and letter to satisfy section 3.2.

16  By that time, Jaynes had already hired Union Erectors to do the work and the work was

17  completed.  Consequently, Jaynes had already breached its obligation under the performance

18  bond to give Ohio Casualty the option to cure American Steel's default. *See Elm Haven Constr.*

19  *Ltd. P'ship*, 376 F.3d at 101 (finding surety's performance under the bond was excused where the

20  plaintiff "hired a replacement subcontractor five weeks before declaring default . . ., and incurred

21  further payment obligations in hiring replacement subcontractors before actually defaulting" the

22  subcontractor); *Hunt Constr. Grp.*, 542 F. Supp. 2d at 95-96 (finding surety's performance

23  excused where the plaintiff failed to give "reasonable notice" of default and instead let original

24  contractor finish the work and did not declare a default until work was completed).

25          Finally, Jaynes and Western argue that American Steel walked off the job so Jaynes had

26  no opportunity to terminate the contract.  But Jaynes does not explain why American Steel's act

27  of leaving the jobsite prevented Jaynes from issuing a termination letter.  The payment bond sets

28

forth the procedure for Jaynes to terminate the contract and give notice to Ohio Casualty to begin performing under the bond.  Nothing in the bond waives these requirements if American Steel leaves the jobsite.

Jaynes failed to comply with the condition precedent in section 3.2 of the performance bond and its failure to do so is a material breach that excuses Ohio Casualty's performance.  I therefore grant American Steel and Ohio Casualty's summary judgment motion with respect to the performance bond.

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Jaynes Corporation and Western Surety Company's motion for summary judgment regarding the obligation to defend and indemnify **(ECF No. 110) is GRANTED in part**.  Third party defendant Ohio Casualty Insurance Company is obligated to defend and indemnify Jaynes Corporation for any judgment entered in this case in favor of Agate Steel, Inc. and against Jaynes Corporation, unless Jaynes Corporation was in material breach of the subcontract between Jaynes Corporation and American Steel Corporation.

IT IS FURTHER ORDERED that American Steel Corporation and Ohio Casualty Insurance Company's motion for summary judgment regarding Jaynes Corporation's bond claims **(ECF No. 117) is GRANTED**.  Ohio Casualty Insurance Corporation's nonperformance under the performance bond is excused.  Additionally, Ohio Casualty Insurance Corporation's obligation to Jaynes Corporation under the payment bond is limited to a judgment entered in this case in favor of Agate Steel, Inc. and against Jaynes Corporation and is capped at the bond's penal sum of $255,000.00.

DATED this 17th day of June, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE